LISLE
vs.
ROGERS.

---

Case 12.

## Lisle vs. Rogers.

ORD. PET.

APPEAL FROM FAYETTE CIRCUIT.

18m528!
100   104
18bm528
e108  274

1. Where a jury finds a special verdict, and the court decides no question of law in the progress of the trial, and there is no motion for a new trial, the court of appeals have no power to revise the decision of the jury.
2. Where the circuit court decides a case alone upon a special verdict of a jury, and the finding of the jury cannot be revised, the court

of appeals can only decide upon the correctness of the decision of the court upon the special verdict and pleadings.

3. The general and almost universal doctrine of the law is, that any material alteration of a note or bill will render it void, and it has been sometimes held that an unimportant alteration will have the same effect. (*Bank of Commonwealth vs. McChord & Payne*, 4 *Dana*, 191.) The correct doctrine, however, is, that the alteration must be in a material part of the instrument.

4. To change the time of payment of a note from the 4th to the 10th of the same month, as it increases the risk by extending the time of payment, renders a note void as to a surety, and he is no longer liable upon it. (19 *John.* 391, *Master vs. Milner, Smith's Lead. Ca. vol.* 1, 458; *Davis vs. Jenny*, 1 *Metcalfe*, 21; *Stephens vs. Graham*, 7 *Sarg. & Rawle*, 505; *Bank U. S. vs. Russell*, 3 *Yeates*, 391.)

5. When a note or bill is altered without the consent of the holder, after he has acquired a right in the note or bill, the holder may still have a right to the money due upon such note or bill, but not where the right attaches after the alteration.

[The facts of the case appear in the opinion of the court. REP.]

*R. W. Woolley*, for appellant—

The cases are numerous upon the subject of the alteration of the dates of contracts, but each and all I have found are cases of *ante-dating*, except one, (*Caldwell vs. Martin*, 9 *East*,) and in that case the post-dating was held to be material, upon the ground that the bill had been *issued;* that a *consideration* had been paid to support it; that it was, when altered, an active binding instrument, and that the *post-dating* had been done either by the holder or some one under whom he claimed. Ante-dating, to the prejudice of the debtor, has been repeatedly held to be a material change, destroying the force of the instrument. (*Bank Commonwealth vs. Hall.*) And upon the ground that the change was prejudicial to the debtor and beneficial to the creditor, and the change made by some one interested. (*Masters vs. Miller*, 4 *Tenn. Rep.*) These cases illustrate the rule stated.

In this case the alteration was beneficial to the defendant, and not made by the plaintiff, nor any one through whom he claims. Rogers is sued upon the contract of assignment, not upon the note. The con-

tract is direct and not remote, he does not trace his title through McMurtry to Rogers, and there is no alteration of the contract of assignment on the back of the note, which is the only contract between the plaintiff and defendant. The alteration too is prejudicial to the plaintiff, as well as beneficial to the defendant, by postponing the time of payment.

2. This is not a suit upon a written contract, and a plea of *non est factum* would not be good. The action is assumpsit, and non-assumpsit is the appropriate plea. The assignment is the evidence in support of the demand.

At the time of placing the date to the note there existed no contract, and there could be no alteration of a contract; there had been no issue of the note. "A bill is said to be issued when it is in the hands of ' some party entitled to make a claim upon it." (*Bayles on Bills*, 116; *Caldwell vs. Martin*, 9 *East*; *Kennesly vs. Nash*, 1 *Starkie*, 435.) In *Bayles on Bills, page* 175, it is said, "there are, however, two cases in ' which an alteration, though in a material part, will ' not vacate the instrument: 1. When such alteration is ' made before the bill is issued, or becomes an avail- ' able instrument; and 2. When it is altered to cor- ' rect a mistake in furtherance of the original inten- ' tion of the parties." "Upon the same principle, ' when three persons join as drawer, acceptor, and ' indorser in the fabrication of an accommodation ' bill, and the date was altered before it came into the ' hands of a holder for value, it was held, that as the ' accommodation parties could not sue upon upon it ' *inter se*, it was not, until it came to the hands of a ' holder for value, an available instrument, and there- ' fore an alteration before that time did not vitiate ' it." (*Walton vs. Hastings*, 2 *Campbell*, 223.) Lord Tenterden said, "the question is whether the alteration made it a new bill." The real date of this whole transaction is the 10th December, 1855.

3. An alteration by a stranger cannot affect the rights of innocent persons. (*Parsons on Contracts*,

*page* 226, *note* 2; 10 *Conn. Rep.* 192; 6 *Cowen,* 746; 8 *Ib.* 71; 8 *Missouri R.* 235; 15 *Johnson,* 293.)

4. The assignor of a promissory note guarantees not only the solvency of the maker but also the genuineness and legality of every thing in respect to the note at the time of the assignment, that being the time of the commencement of the liability, which reaches back to every thing which occurred before the date. The note in this case has the name of Rogers on the back thereof, and above it is written "pay to the order of Rufus Lisle, 10th December, 1855;" that was the day Rogers signed it; the whole is supposed to be written at the same time.

The case of *Woodworth vs. The Bank of America,* 19 *Johnson,* was decided by the supreme court of New York, by Chief Justice Spencer, with the unanimous concurrence of his associates; their decision was reversed by the court of errors, consisting of the senators, men not learned in the law, against the opinion of Chancellor Kent and nine senators, seventeen voting for the reversal. The decision is not authoritative, and the weight of legal information is opposed to the reversal.

*M. C. Johnson* and *Hunt & Harrison,* for appellee—

As there was no motion for a new trial, or any attack made upon the verdict. the only question that can arise on this appeal is, whether the judgment of the court is correct upon the fact presented, and the verdict of the jury? In other words, whether the alteration of the note by McMurtry, before Lisle bought it, discharged Rogers from liability?

1. The alteration of the note was in a material part. It prolonged the day of payment, and consequently increased the liability of Rogers for his principal. That a material alteration of a note, if made by a party thereto, discharges all parties who have not consented to the change, even if it is in the hands of a *bona fide* holder without notice of the change, is a familiar doctrine, and scarcely needs the

citation of authority to sustain it. The contract is no longer that which 'the party entered into. (*Chitty Jr. on Bills*, 100; *Masters vs. Miller,* 4 *T. Rep.* 320.) "If a bill of exchange or promissory note be ' altered without the consent of the parties, in any ' material part, as in the date, sum, or time when ' payable, such alteration will, at common law, and ' independent of the stamp acts, render the bill or ' note wholly invalid as against any party not consent-' ing to such alteration, and this though it be in the ' hands of an innocent holder." (*Chitty on Bills*, 100.) The case of *Woodworth vs. Bank of America,* 19 *Johnson*, 391, is analagous to this case, and a direct authority for the principles for which we contend; also, *Stephens vs. Graham,* 7 *Searg. & Rawle,* 545, and *Downs vs. Richardson,* 5 *Barnwell & Ald.* 674, cited in *Bayles on Bills,* 97; *Bell vs. State Bank,* 7 *Blackford Inda.* 456; *Bank of Commonwealth vs McChord,* 4 *Dana,* 191. There seems an overwhelming weight of authority to sustain the position we assume, and we have been referred to nothing to the contrary.

2. But it is said the note was of no effect, but existed only in *fieri* till sold by Lisle, and that the assignment is of that date, and then it took effect; that Rogers by indorsing the note in blank, and delivering it to McMurtry that he might have it discounted, constituted him his agent for that purpose, and that he is bound by his acts as such. That an assignment imports a guaranty of the genuineness of the instrument assigned, and that Rogers' assignment became effectual only when the note was issued to Lisle through the act of his agent McMurtry, this guaranty of its genuineness takes date then, and applies to it in its then condition. This reasoning, though at first view plausible, will be found upon investigation to be unsound and without authority to sustain it. If the maker is the agent of the party who indorses the note in blank for his accommodation, (which is here denied,) he is a special agent, with a limited authority for a single transaction, and he

who deals with him must, at his peril, look to the extent of his authority. He is an agent to assign the identical note which was indorsed and not another. An agent can never enlarge his authority by altering his power of attorney fraudulently, even in favor of one who is ignorant of the fraud. But in no proper sense can the maker of a note be regarded as the agent of the indorser. In this case McMurtry was transacting his own business, for his own benefit. True, he had authority to fill up the indorsement to any one to whom he might pass the note, but this authority being for his own benefit constituted no agency for Rogers, and until issued it was in *fieri* merely, and Rogers' endorsement could have no effect; but he had no authority to alter the note and issue it in an altered form; so soon as it was altered all power *to issue it* ceased, and there was no authority to issue the note or guaranty its genuineness, which is a mere incident to the assignment. In *Bayles on Bills, page* 97, it is said, "a bill is not to be considered as ' issued until it is in the hands of some one entitled ' to make claim on it, though it is accepted and in- ' dorsed, and an alteration thereon, without the ' knowledgment of the acceptor or indorser, though ' it will entitle them to consider their acceptance, or ' acceptance vacated if they do not consent to it, ' will be binding on them if they assent."

But it is said, that as the note was left with McMurtry to be passed off to raise money, that he who trusted him should rather suffer than the purchaser of the note. This doctrine does not apply. If applicable it might, with more propriety, have been applied in the case of *Bank of Commonwealth vs. McChord, supra*, than in this case.

In respect to alterations, what is material, and what is not material, the court is referred to the following authorities: *Chitty Jr. on Bills*, 100, *N. A.*; *Bayles on Bills*, 92; *Chitty*, 100; *Smith's Mercantile Law*, 329; *Adams vs. Frye*, 3 *Metcalfe*, 103; *Burchet vs. Mountfort*, 2 *Fairfit*, 115; 10 *East*, 431.

Lisle
*vs.*
Rogers.

Dec. 19, 1857.

Judge Simpson delivered the opinion of the court.

Lisle sued Rogers as the assignor of a note executed by John McMurtry for $2,500, dated December 10th, 1855, payable six months after date.

Rogers alledged, in his answer, that he endorsed the note for the accommodation of McMurtry, who sold it to Lisle; that when he endorsed it it was dated the 4th instead of the 10th of December; and that McMurtry, without his knowledge or consent, altered the date, which Lisle knew when he bought it. This alteration in the date of the note he relied upon as having the legal effect to discharge him from all liability as assignor.

Upon the trial the jury, by the consent of the parties, found a special verdict, and upon that verdict the court gave judgment for the defendant. The verdict was in substance that the date of the note sued on had been altered by McMurtry from the 4th to the 10th of December, after Rogers endorsed it, without his knowledge or consent, and before it was sold to Lisle, but that the alteration was not known to Lisle when he purchased.

The plaintiff has appealed to this court from the judgment of the court below; and it becomes important to determine, in the first place, what questions are presented upon this appeal, and the permissibility of an inquiry by this court in relation to the correctness of the verdict of the jury upon the evidence adduced on the trial.

No motion was made for a new trial, nor was the propriety of the verdict of the jury called in question in any manner in the court below. The questions of fact submitted to the jury, and to which they were required to respond, were such as the parties deemed material, and they consented that upon them alone a special verdict should be rendered. The court did not decide any question of law during the progress of the trial, but only pronounced judgment on the special verdict of the jury. The correctness of that judgment is the only question that arises on this appeal.

1. When a jury finds a special verdict, and the court decides no question of law in the progress of the trial, and there is no motion for a new trial, the court of appeals have no power to revise the decision of the jury.

The counsel for the appellant, to sustain the position that the alteration which was made in the date of the note was immaterial, contended that the note when it was endorsed by Rogers was in blank as to the time of payment, and that this fact was sufficietly established by the evidence in the cause. We do not deem it necessary to decide what effect this fact would be entitled to, if it had been found by the jury, and constituted a part of their special verdict. But the court below did not decide upon all the evidence in the cause, nor was it authorized so to decide, upon any question that was made before it. Its decision was based upon the verdict of the jury alone, and this court, in the investigation of the correctness of the judgment pronounced by it, cannot go behind the verdict, and examine the testimony, nor decide whether other facts were proved, which might have modified essentially the legal effect of the verdict. If the fact referred to had an existence, and was regarded as important, it could and should have been presented to the jury, and responded to by them, but this not having been done it cannot now be relied upon.

The doctrine that a material alteration of a note or bill will render it void seems to be almost universally established, and indeed it has been sometimes held that any alteration, however unimportant it may be, will have the same effect. (*Bank Commonwealth vs. McChord and Payne*, 4 *Dana*, 191.) But conceding the correct doctrine to be, that an alteration to avoid such an instrument must be material—and such seems to be the tendency of modern decisions on the subject—it is perfectly manifest that the alteration in the note sued on, was very material so far as the assignor was concerned. His liability was not that of an endorser on commercial paper, but depended on the inability of his assignee to coerce payment out of the maker by the use of due diligence immediately upon the maturity of the note. Consequently the time of its payment was very material to him, be-

*Margin notes:*

LISLE
vs
ROGERS.

2. Where the circuit court decides a case alone upon a special verdict of a jury, and the finding of the jury cannot be revised, the court of appeals can only decide upon the correctness of the decision of the court upon the special verdict and pleadings.

3. The general and almost universal doctrine of the law is, that any material alteration of a note or bill will render it void; and it has been sometimes held that an unimportant alteration will have the same effect. (*Bank of Commonwealth vs. McChord and Payne*, 4 *Dana*, 191.) The correct doctrine, however, is, that the alteration must be in a material part of the instrument.

cause its extension tended to increase his risk. He might have been willing to have become liable as an assignor on a note payable in three months, and have refused to incur such a liability on a note payable in. six months. By his assignment he guarrantied the solvency of the maker until the note became due; and, although an extension of the time for six days might not greatly increase his risk, yet as it did to some extent have that effect, the alteration must be deemed to be material, and to have exonerated the assignor from all liability upon his assignment, unless there be some reason for exempting this case from the operation of the general doctrine upon the subject. In our inquiries as to the materiality of the alteration in the date, we have regarded the time of payment as having been inserted in the note at the time it was endorsed by Rogers, as nothing contained in the special verdict will authorize a different conclusion.

Does any reason then exist why the general rule to which we have referred does not apply to this case?

One of the reasons relied upon as exempting it from the operation of this rule is the circumstance that the alteration was made by McMurtry whilst the note was in his possession, and before it was sold to Lisle. It is contended that previous to that time the instrument was incomplete, and imposed no obligation on either the maker or assignor; that the contract had no legal existence until the sale and delivery of the note to the plaintiff, and that there could be no legal alteration of a contract which had no existence. And besides, that the assignor, by leaving in the hands of the maker an instrument thus unfinished and incomplete, for the purpose of issuing it, must be presumed to have conferred upon him an authority to render the instrument complete, by making its date correspond with the time of its sale and delivery.

This argument is defective, in failing to discriminate between the tenor and form of the instrument, and the obligation created by it. The form and terms of the instrument were complete when the endorsement was made, although the obligation imposed by it was not created until it was actually delivered to the purchaser. It is a material change of the instrument, without the consent of the person whose liability will be thereby prejudicially affected, that discharges him from his liability on it. It is unimportant when such alteration occurs, if it be made without authority, and after the person prejudiced thereby becomes a party to the instrument. The extent of the authority conferred upon the maker, by the act of the endorser in placing the paper in his hands for the purpose of raising money upon it, is a different question. Every reasonable presumption of authority should, we admit, be indulged against the endorser, under such circumstances. The right to fill up all the blanks in the instrument should be presumed, but this presumed authority cannot be so extended as to empower the maker to change the note in any essential particular, either in date, amount, or time of payment, when they are expressed in the instrument at the time the endorsement was made. If a person were to endorse a note for one thousand dollars, and leave it with the maker to sell for his own benefit, certainly no implication could arise, that he had authority to alter it to five thousand dollars, and to increase to that extent the liability of the endorser. If he would have no authority to make that alteration, upon the same principle he would have no authority to make one of less importance. The true doctrine on the subject is, that the maker of the note has, under such circumstances, a limited authority which he cannot exceed, and which only empowers him to make sale of it according to its tenor and effect at the time it was endorsed. Where a note is incomplete, either as to its date, amount, or any other particular, at the time of the

<div style="margin-left:0">

LISLE
*vs.*
ROGERS.

</div>

endorsement, there his authority is less circumscribed, and he may fill up the blanks according to his own discretion. Indeed, such an endorsement on a blank note has been held to be a letter of credit for an indefinite sum. (*Russel vs. Langstaff, Doug.* 514.)

In the case of the *Bank of America vs. Woodworth,* (18 *John. Rep. page* 315,) where a promissory note was made and endorsed for the accommodation of the maker, who having it in his possession after it was endorsed, wrote in the margin "payable at the Bank of America," it was decided that the defendant having endorsed the note, without any restraint on the maker as to the place of payment, he must be deemed to have left that circumstance to his control and discretion, and that for this reason the alteration was not such a one as discharged the endorser from his liability on the instrument. But it may be inferred, from the reasoning of the court, that if it had deemed the alteration material, and it had been made without the consent, either express or implied, of the endorser, it would have had that effect. The judgment of the supreme court was afterwards reversed in the court for the correction of errors, (19 *John. Rep.* 391,) and it was there decided that the alteration was not only unauthorized, but was material, and having been made by the maker of the note without the approbation of the endorser, the latter was thereby discharged from all liability on the instrument. The chief justice and the chancellor dissented from that opinion, but their dissent was placed by them mainly on the ground of an implied authority in the maker to appoint a place of payment, inasmuch as no place of payment was appointed in the body of the note. And the chancellor was also of the opinion that the original contract was not changed by the addition that was made to the note, and that therefore the alteration was immaterial.

<div style="margin-left:0">

4. To change
the time of pay-

</div>

That decision is an authority expressly in point in this case. And as it is well settled that alterations in

the date, sum, or time for payment, *are material,* (*Master vs. Milner, Smith's Leading Cases, vol.* 1, 458, and the cases refered to in the note,) the alteration of the date in the note sued on was of such a character as under the doctrine in that case, and in many others, wholly discharges the endorser from all liability. (*Davis vs. Jenny,* 1 *Metcalfe,* 221; *Stephens vs. Graham,* 7 *Sergeant and Rawle,* 505; *Bank of the United States vs. Russell, &c.,* 3 *Yeates,* 391.)

It is also contended that the alteration in the date of the note not having been made by Lisle, or with his privity or consent, but by McMurtry himself, falls within that class of cases in which the alteration having been made by a *stranger,* does not affect the rights of the party interested in the instrument.

The cases in which the circumstance of the alteration having been made by a third person, without the privity of the person claiming, prevents it being fatal, are those in which the plaintiff had, previously to the alteration, acquired a good *right* and *title* to the money on the note, of which he could not be divested, by the improper act of a *stranger,* committed without his privity or assent. But the present case is of a different description altogether; the alteration having been made before the plaintiff acquired any title to the note, any title that he has must have attached alone to the instrument in its altered condition. In the former class of cases the claimant recovers on the note, as it was actually made, without regard to the alteration, whilst in this case, if the plaintiff can recover at all, it must be on the note in its altered state, inasmuch, as he had no title to it until after the alteration was made. Neither did the maker of the note occupy the attitude of a stranger. He had a right to alter the note, so far as his liability was concerned, but he had no right to make an alteration materially affecting the endorsers liability, so far as the latter was concerned. And as the plaintiff cannot claim under the instrument, in the condition it was before it was endorsed, because he had

---

LISLE
*vs.*
ROGERS.

ment of a note from the 4th to the 10th of the same month, as it increases the risk by extending the time of payment, renders a note void as to a surety, and he is no longer liable upon it. (19 *John.* 391; *Master vs. Milner, Smith's Lead. Ca. vol.* 1, 458; *Davis vs. Jenny,* 1 *Metcalf,* 21; *Stephens vs. Graham,* 7 *Sarg. & Rawle,* 505; *Bank U. S. vs. Russell,* 3 *Yeates,* 391.)

5. When a note or bill is altered without the consent of the holder, after he has acquired right in the note or bill, the holder may still have a right to the money due upon such note or bill, but not when the right attaches after the alteration.

uo title to it during the time it was in that condition and as the endorser is not liable on his contract, because of the alteration of the note in a material part, without his knowledge or assent, it follows that the plaintiff has no remedy whatever against the assignor.

But the liability of the assignor is also attempted to be placed upon another ground. It is said that he not only guaranties the solvency of the debtor, but also the genuineness of the contract assigned, and that the guarranty or promise commences its legal existence only from the date of the contract between the assignor and assignee.

This proposition is no doubt correct, but the principle it involves is misapplied in the attempt to make the sale of the note to the plaintiff the time of the guaranty by the assignor of the genuineness of the instrument assigned. It is true, that the contract between the assignor and assignee was not created until the sale of the note was made; but that contract related back to the time of the endorsement, and only guarantied the genuineness of the instrument at the time the endorsement was made upon it, and not at the time of the sale to the plaintiff by the maker. The doctrine contended for would render the endorser liable on the note, although the amount of it might have been altered from one to five thousand dollars, after the endorsement was made, and before it was assigned by the maker, to the assignee.

We are therefore of the opinion that neither of the grounds relied upon is sufficient to take the case out of the general rule, by which a material alteration has the effect of avoiding a contract.

Wherefore, the judgment is affirmed.